IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:06-CV-372-FL

| | |
|---|---|
| DARIUS E. CARLTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Darius E. Carlton ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that plaintiff is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (DE #9, 13). The motions were referred to the undersigned Magistrate Judge for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that defendant's motion be granted, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 24 April 2003, alleging a disability onset date of 18 October 2002 due to lower back pain, for which he had surgery in February 2003. Transcript of Proceedings ("Tr.") 49, 54, 57, 91-96. The application was denied initially, *id.* 35, and again upon reconsideration, *id.* 41, and a request for hearing was timely filed, *id.* 44. On 8 March 2005, a hearing was held before an Administrative Law Judge ("ALJ"). *Id.* 187-209. The ALJ issued a

decision denying plaintiff's claim on 20 June 2005. *Id.* 13-21. Plaintiff timely requested review by the Appeals Council, *id.* 9, and submitted one additional exhibit, *id.* 8, 180-86. The Appeals Council considered the additional evidence and denied the request for review on 31 August 2006. *Id.* 5-7. At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.1581. Plaintiff commenced this proceeding for judicial review on 13 September 2006, pursuant to 42 U.S.C. § 405(g).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act goes on to describe disability more specifically in terms of impairments:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The burden of proving disability falls upon the claimant. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. Part 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a

3

medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

C.  **Findings of the ALJ**

Plaintiff was forty-four years old on the alleged onset date of disability and forty-six years old on the date of the administrative hearing. Tr. 54, 187. Plaintiff has a high school education and his past work experience included employment as a press operator. *Id.* 14.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 14, 20 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): lumbrosacral degenerative disc disease ("DDD") and right knee degenerative joint disease ("DJD"). Tr. 17, 20 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 17, 20 ¶ 4.

At step four, the ALJ determined that plaintiff had the RFC to perform work at the light exertional level and to sit or stand for six hours in an eight hour work day with normal breaks, but that he was restricted from frequent climbing of ladders, ropes, and scaffolds; frequent balancing, kneeling, and crawling; occasional stooping; and any climbing of stairs or ramps. *Id.* 18-19, 20 ¶ 6. Based on this RFC, the ALJ found that plaintiff could not perform any of his past relevant work. *Id.* 19, 20 ¶ 7. At step five, the ALJ adopted the testimony of a vocational expert and found that, based on plaintiff's RFC, age, educational background, and work experience, he was capable of making a successful adjustment to work that exists in significant numbers in the national economy, including the unskilled light jobs of cashier, office helper, and fast food worker. *Id.* 20, 21 ¶ 12.

## II. DISCUSSION

### A. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that the ALJ failed: (1) to find that plaintiff's lumbrosacral DDD equaled listing 1.04B; (2) to give proper weight to a treating physician's opinion; (3) to properly assess plaintiff's credibility; and (4) to properly evaluate plaintiff's RFC. Each of these contentions is examined in turn below after a review of the applicable standard of review.

### B. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992)

5

(*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### C.   Listing 1.04

In finding that plaintiff did not meet or equal any of the listings, the ALJ stated that he had specifically considered listing 1.04, which addresses DDD and other disorders of the spine resulting in compromise of a nerve root or the spinal cord. *Id.* 17.[1] Listing 1.04 includes criteria for three specific impairments, namely, nerve root compression in 1.04A, spinal arachnoiditis in 1.04B, and lumbar spinal stenosis in 1.04C. Plaintiff contends that the ALJ should have found that plaintiff's

---

[1] The ALJ also stated that he considered listing 1.02, relating to major dysfunction of a joint, presumably in connection with the DJD of plaintiff's right knee. Plaintiff does not contend that the ALJ's finding with respect to this listing is erroneous and with good reason. The record is bereft of evidence that plaintiff suffers from "ineffective ambulation," as required under listing 1.02A. While ineffective ambulation requires that a plaintiff have "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive devices(s) that limits the functioning of both upper extremities," Listing 1.00B2b(1), plaintiff here uses only a single-handed cane. Tr. 198. Conversely, there is substantial evidence that plaintiff has "effective ambulation," defined as being "capable of sustaining a reasonable walking-pace over a sufficient distance to be able to carry out activities of daily living." Listing 1.00B2b(2). Such evidence includes plaintiff's statement in a May 2003 pain questionnaire that he began each day with a half-mile walk, Tr. 67 ¶ 19; *see also* 199, and a treating orthopaedist's restricting plaintiff simply to the avoidance of "steps and constant walking on concrete floor," *id.* 68.

6

lumbrosacral DDD was equivalent to listing 1.04B for spinal arachnoiditis. The court does not agree.

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing not only any substantial gainful activity, but any gainful activity at all. 20 C.F.R. § 404.1525(a). Therefore, if a claimant's impairments meet or equal a listing that fact alone establishes that the claimant is disabled. *Id.* § 404.1520(d).

An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990); Soc. Sec. R. 83-19. Even if an impairment does not meet the criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 404.1525(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan v. Zebley,* 493 U.S. at 531; 20 C.F.R. § 404.1526(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan,* 493 U.S. at 531.

As indicated, listing 1.04B addresses DDD and other spinal disorders resulting in compromise of a nerve root or the spinal cord coupled with spinal arachnoiditis. Spinal arachnoiditis is defined, in pertinent part, as "a condition characterized by adhesive thickening of the arachnoid which may cause intermittent ill-defined burning pain and sensory dysesthesia." Listing 1.00K2b. Dysesthesia is a condition in which ordinary stimuli produce disagreeable sensations.[2] The listing requires that the spinal arachnoiditis be "confirmed by an operative note, a pathology report of tissue

---

[2]*See* Stedman's Medical Dictionary, p. 596 (28th ed. 2006) ("Stedman's").

7

biopsy, or appropriate medically accepted imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." Listing 1.04B.

It appears undisputed that plaintiff does not meet the criteria of listing 1.04B. He has not been formally diagnosed with spinal arachnoiditis, and there is no operative note, pathology report, or imaging establishing that he has spinal arachnoiditis. *See* tr. 91, 95, 97, 141-43. Plaintiff can therefore satisfy listing 1.04B only if his impairment equals that listing.

An initial question presented is whether medical equivalence to listing 1.04B can be shown in the absence of a diagnosis of spinal arachnoiditis. Plaintiff contends that his diagnosis with epidural fibrosis is an adequate analogue for diagnosis with spinal arachnoiditis. Tr. 177 (formal diagnosis in January 2005); *see also* 127 (epidural fibrosis mentioned as probability). While it is true that both conditions involve scarring of tissues surrounding the spinal cord, they are distinct. Among other differences, epidural fibrosis is scarring that occurs outside the dural sac which surrounds the spinal cord, whereas spinal arachnoiditis entails scarring within the dural sac.[3] Listing 1.04B by its terms relates only to spinal arachnoiditis.

More fundamentally, the Regulations emphasize the importance of ensuring that spinal arachnoiditis specifically is diagnosed and, as indicated, even specify the manner in which the diagnosis is to be confirmed. Listing 1.00K2, 1.04B. The Regulations state: "[Because] [a]rachnoiditis is sometimes used as a diagnosis when such a diagnosis is unsupported by clinical or laboratory findings . . . care must be taken to ensure that the diagnosis is documented as described

---

[3] *See, e.g.,* the Frequently Asked Questions section of the website of Arachnoiditis Sufferers Action and Monitoring Society of New Zealand. www.arachnoiditis.info/about_arach_faq.html.

in 1.04B." Listing 1.00K2b. Given the specific focus of listing 1.04B on the particular condition of arachnoiditis, it is questionable whether another condition can, in effect, substitute for it.

Irrespective of whether the law permits a claimant to show equivalence to listing 1.04B in this context, the court finds that there is substantial evidence to support the ALJ's finding that plaintiff's lumbosacral DDD is not equivalent to listing 1.04B. The record does not show, as required for equivalence, that the medical findings relating to plaintiff's impairment are at least equal in severity to the criteria for listing 1.04B. The listing requires that there be "severe burning or painful dysesthesia." Listing 1.04B. While the medical records show that plaintiff did have paresthesia, which is a burning or prickling sensation,[4] there is no indication that it was severe. Tr. 127. Similarly, the records describe plaintiff to have "some degree of dysesthesias." *Id.* They are not characterized as painful.

More generally, there is substantial evidence that plaintiff's back impairment was not severe enough to deprive him of the ability to work. Two RFC assessments performed on plaintiff by state agency consultants in 2003 after his surgery found that plaintiff retained the RFC to perform light work, subject to certain restrictions. Tr. 108-15, 116-23. The ALJ himself, of course, found that plaintiff has the RFC to perform light work based, in part, on one of these assessments. *Id.* 18-19, 20 ¶ 6. As discussed below, the court finds that this determination is supported by substantial evidence. The finding that a claimant retains the RFC to perform substantial gainful employment

---

[4] The Paresthesia Information Page on the website of the National Institute of Neurological Disorders and Stroke, a part of the National Institutes of Health, defines paresthesia in relevant part as follows: "Paresthesia refers to a burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body." www.ninds.nih.gov/disorders/paresthesia/paresthesia.htm#What_is. *See also* Stedman's, p. 1425.

negates the possibility of presumptive disability based on medical equivalence to a listing. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005).

Plaintiff contends that the ALJ should have acquired additional evidence on the issue of medical equivalence from Larry S. Davidson, M.D., one of two neurosurgeons who operated on plaintiff's back in February 2003 and who continued to treat plaintiff until January 2005. Tr., *e.g.*, 91-96, 136, 177. The contention is without merit.

Soc. Sec. R. 96-6p requires that "the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence" be received into evidence by the ALJ as expert opinion evidence and given appropriate weight. Soc. Sec. R. 96-6p. This requirement may be satisfied by various documents on which medical and psychological consultants designated by the Commissioner record their findings. *Id.* Here, the requirement is satisfied by the two RFC assessments performed on plaintiff by state agency consultants in 2003 finding that plaintiff had the capacity for light work. Tr. 108-15, 116-23; *see also id.* 30 (disability determination and transmittal form referencing May 2003 RFC assessment in block 32), 33 (same re June 2003 assessment); *see Dolan v. Barnhart*, Civ. Act. No. 2:03-0208, 2005 WL 5865347, at *14 (S.D. W. Va. 7 Dec. 2005).

Soc. Sec. R. 96-6p also provides that the receipt of additional medical evidence postdating assessments such as these requires that an updated medical opinion on medical equivalence be obtained if the ALJ determines that the additional evidence may change the state agency consultants' finding of nonequivalence. Soc. Sec. R. 96-6p. Here, subsequent to the state agency assessments, Dr. Davidson completed two forms, one dated 25 February 2004 and the other 7 March 2005, in which he stated, in effect, that plaintiff was disabled. Tr. 129, 179. The ALJ did not find it necessary to obtain an updated medical opinion on equivalence as a result of Dr. Davidson's letters.

The court finds that this determination by the ALJ is supported by substantial evidence because, among other reasons, Dr. Davidson's opinions were lawfully given limited weight by the ALJ, as explained in the next section. For this and the other reasons stated, the court should reject plaintiff's challenge to the ALJ's finding on equivalence to listing 1.04B.

### D.     Dr. Davidson's Opinions

Plaintiff contends that the ALJ erred when he rejected the opinions of Dr. Davidson stated in forms of 25 February 2004 and the other 7 March 2005. Tr. 18. The court disagrees.

While the medical opinions[5] of treating physicians are not entitled to controlling weight, the ALJ may accord them less weight only if they are not supported by clinical evidence or are inconsistent with other substantial evidence of record. *See Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also King v. Barnhart*, 415 F. Supp. 2d 607, 611 (E.D.N.C. 2005); 20 C.F.R. § 404.1527(d)(2). The opinions of a physician on issues reserved to the Commissioner, that is, legal conclusions, are not entitled to special weight because of their source, including statements that the claimant is disabled or unable to work. *Morgan v. Barnhart*, 142 Fed. Appx. 716, 721-22, 2005 WL 1870019, at *4 (4th Cir. 5 Aug. 2005) (citing 20 C.F.R. § 404.1527(e)(1), (3)). However, these opinions must still be evaluated and accorded appropriate weight. *Id.* (citing SSR 96-5p, at *3). More weight should be given the more the physician presents relevant supporting evidence, the better he explains the opinion, and the more consistent the opinion is with the record as a whole. *Patterson*

---

[5] "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairments(s), . . . and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

11

*v. Barnhart*, No. 5:06cv00037, 2007 WL 895136, at *8 (W.D. Va. 23 March 2007) (citing 20 C.F.R. § 404.1527(d)(3), (4)).

Here, the ALJ rejected Dr. Davidson's opinions, in part, on the grounds that the opinions do "not include a function-by-function analysis of claimant's exertional and non-exertional capabilities." Tr. 18. He also found that the opinions are not "supported by his own treatment notes." *Id.* The court finds the ALJ's findings to be supported by substantial evidence.

The conclusory nature of the 25 February 2004 form is apparent on its face. *Id.* 129. It consists of two typed, one-sentence statements, under each of which there is a place to check either "YES" or "NO," and a space for "Additional Comments." The first statement reads: "Based on my observation and treatment of Darius Carlton, I believe this patient could be expected to miss in excess of 25-30 days of work per year as a result of his underlying medical condition(s)." *Id.* 129. Dr. Davidson checked "YES" as to this statement. The "Additional Comments" section under this statement is left blank. Accordingly, there is no explanation of this statement, not even a specification of the "underlying medical condition(s)" referenced or clarification of the meaning of the indefinite phrase "could be expected." Nor is there a presentation of supporting medical evidence. As the ALJ found, there is no function-by-function analysis.

The second statement reads: "Based on my observation and treatment of Darius Carlton, I believe this patient will experience symptoms, on a chronic basis, from his underlying medical condition(s) which could reasonably be expected to cause distraction from job tasks or result in a failure to complete jobs tasks in a timely manner for a total of at least one or more hours during a typical 8 hour workday." *Id.* Dr. Davidson checked "YES" to this statement. Again, the

12

"Additional Comments" section is left blank, leaving the statement unexplained and unsupported. Among other missing information, there is no specification of the symptoms at issue, the "underlying medical condition(s)" involved, the likelihood of distraction or inability to complete tasks, or the likely number of hours of distraction and inability to complete tasks. As the ALJ found, there is no function-by-function analysis.

This form is accompanied by a clinical assessment of pain form, in which Dr. Davidson selected preprinted answers to four questions. *Id.* 130-31. As with the preceding form, the information presented is vague and indefinite, and unsupported by other medical evidence.

The conclusions in the 25 February 2004 form to the effect that plaintiff cannot work regularly are, in accordance with the ALJ's finding, inconsistent with Dr. Davidson's medical notes from the three preceding office visits—which support the notion that plaintiff was improving after surgery. *See id.* 132-34. Specifically, on 31 March 2003 at plaintiff's first post-surgical follow-up visit, Dr. Davidson stated that plaintiff "looks very good for everything he has been through. . . . [and] feels as though his back is 'stronger'. . . . Overall, he is making good progress. His AP and lateral films are certainly acceptable at this point." *Id.* 134.

Approximately nine weeks later, on 9 June 2003, Dr. Davidson examined plaintiff and again noted his post-surgical improvement. *Id.* 133. Dr. Davidson stated that plaintiff's films look good and that plaintiff "is feeling much better than he did preoperatively. He feels as though the whole thing has been well worthwhile." *Id.* Dr. Davidson concluded his assessment by stating "I suppose it might be reasonable that we could get him back to some form of employment." *Id.* During a 14

13

October 2003 visit, Dr. Davidson, consistent with his two prior assessments, indicated that plaintiff "is doing very well clinically." *Id.* 132.

Turning to the form dated 7 March 2005, it is no less conclusory than the 25 February 2004 form. *Id.* 179. The form contains a one-sentence statement reading as follows: "In my opinion as a medical doctor, and based on my treatment of Darius Carlton, I believe that he could not sustain work for eight (8) hours per day, five (5) days per week at any kind of job, even one that is seated most of the day, for the following reasons." *Id.* The reasons listed, in handwriting, are right lower extremity "neuropathic pain," "intolerance of excessive sitting/standing secondary to chronic pain," and "epidural fibrosis." *Id.* No further explanation of the opinion is provided, including precisely why plaintiff could not do "any kind of job." The term "excessive" is not defined, and its meaning is not otherwise apparent. The finding that plaintiff could not tolerate "excessive sitting" is new to the record; his previous observations discussed the onset of lower back pain—caused by fatigue—after excessive walking or standing. *See id.* 127. Also, as the ALJ found, there is no function-by-function analysis that could lend credence to the opinion. No other supporting medical evidence is presented.

The conclusions in the 7 March 2005 form are not supported by Dr. Davidson's own records, as the ALJ found. After the February 2004 visit, almost nine months passed before plaintiff returned to Dr. Davidson on 28 June 2004, complaining of right leg pain and back pain. *Id.* 128. Dr. Davidson described plaintiff's back pain as "mechanical" and felt it would be prudent to "rule out any sort of structural issue here, either new or residual in nature." *Id.* After a CT scan on 13 July 2004, *id.* 141-43, plaintiff returned to Dr. Davidson on 27 July 2004. During this visit, Dr. Davidson noted that the CT scan revealed the success of the prior back surgery in that plaintiff obtained "good

14

fusion of L4-5 and L5-S1 in the interbody space as well as good instrumentation placement." *Id.* 127. Dr. Davidson further stated that plaintiff's right leg pain which "was unrelenting and debilitating before his surgery . . . is certainly better than it was before" and that his lower back pain was the result of "fatigue." *Id.* Plaintiff was diagnosed with "lower level parasthesias and hypesthesias [*i.e.*, diminished sensitivity to stimuli[6]] and some degree of dysesthesias as well." *Id.* After determining that further surgery would not be able to correct these conditions Dr. Davidson stated, "[a]s to how permanent this shall be or how much improvement we will see over time is debatable." *Id.*

On 21 September 2004, plaintiff returned to Dr. Davidson after completing a course of physical therapy. *Id.* 178. Dr. Davidson stated that plaintiff "did have some relief of his right leg pain with the physical therapy and notices that he has better days when he actually does the exercises at home." *Id.* Plaintiff also indicated that the prescription drug Elavil did help manage his symptoms. *Id.* On 31 January 2005, plaintiff's final documented visit with Dr. Davidson, it was noted that plaintiff continued to complain of right lower extremity neuropathic pain although there was slight improvement with a higher dosage of Elavil. *Id.* 177. Dr. Davidson concluded his evaluation by stating that he did not believe that further surgery of the lumbar spine "would be of very much help given the fact that his myelogram [*i.e.*, a spinal x-ray] . . . did not demonstrate a persistent surgical problem although he does have epidural fibrosis." *Id.*

Dr. Davidson's records thus show that plaintiff had achieved a certain degree of control over his symptoms with physical therapy and Elavil, *id.* 178-79, and did not present a surgical medical

---

[6] *See* Stedman's, p. 929.

15

problem, *id.* 177. These findings came against the backdrop of plaintiff's improving physical condition after surgery. *See id.* 127, 132; *cf. id.* 133 (Dr. Davidson stating in June 2003 that plaintiff could begin to return to work with "certain activity restriction limitations"). These treatment notes simply do not show the disabling conditions described in the 7 March 2005 form.

There is other evidence in the record that also contradicts the opinions expressed by Dr. Davidson in the 25 February 2004 and 7 March 2005 forms. This evidence includes the two RFC assessments performed on plaintiff by state agency consultants in 2003 concluding that plaintiff retained the RFC to perform light work. Tr. 108-15, 116-23.

Moreover, the conclusory and unsupported opinions of Dr. Davidson are tantamount to opinions on the ultimate issue of disability. As indicated, such opinions are not entitled to special weight because of their source. *E.g.*, 20 C.F.R. § 404.1527(e)(1), (3). For this and the other reasons stated, plaintiff's challenge to the ALJ's evaluation of Dr. Davidson's opinions should be rejected.

### E. Plaintiff's Credibility

Plaintiff argues that the ALJ's refusal to fully credit plaintiff's testimony regarding his alleged limitations is not supported by substantial evidence. The court disagrees.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Craig*, 76 F.3d at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific

reasons" for that finding that are "grounded in the evidence." *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. R. 96-7p).

At the hearing, plaintiff testified that his pain is fairly constant, *id.* 194, and is aggravated by prolonged sitting and standing, *id.* 195. He stated that he spends eighty percent of the day laying down. *Id.* While his pain is persistent, he testified that he has four "bad" days a week. *Id.* 196. Plaintiff stated that he is able to stand, *id.* 196, and walk, *id.* 197, for twenty minutes without pain and can sit for thirty-five to forty minutes before the onset of discomfort, *id.*

In satisfaction of the first step of assessment process, the ALJ found expressly that plaintiff "has a medically determinable impairment that could reasonably be expected to produce the pain and other symptoms alleged." *Id.* 17. This finding does not appear to be in dispute.

With respect to the second step, the ALJ explained in detail inconsistencies between plaintiff's allegations of pain and discomfort and the medical evidence. *Id.* 17-18. For example, the ALJ cited Dr. Davidson's visitation notes describing plaintiff's improvement since his back surgery; the improved control plaintiff obtained over his most recent discomfort with physical therapy and the drug Elavil; a recent CT scan which did not manifest a surgical problem; and plaintiff's use of prescription drugs on only an intermittent basis. *Id.* 18. There is substantial evidence in the record supporting each of these specific findings the ALJ made regarding plaintiff's credibility.

Moreover, it is apparent that the ALJ did give some weight to plaintiff's complaints. The RFC limits plaintiff to light work with various restrictions. *Id.* 18, 20 ¶ 6. For this and the other reasons stated, plaintiff's challenge to the ALJ's credibility determination should be denied.

17

### F.     Plaintiff's RFC

Plaintiff contends that the ALJ's determination that plaintiff has the RFC to perform a limited range of light work is erroneous. This contention is based largely on his contentions that the ALJ failed to give Dr. Davidson's opinions sufficient weight and to properly assess plaintiff's credibility. For the reasons discussed, these contentions are without merit.

In making his RFC determination, the ALJ relied, in part, on the RFC assessment performed on plaintiff by non-examining state agency consultant, Frank Virgil, M.D., in 2003. Tr. 15, 18, 108-15, 116-23. While findings from such a non-examining source does not generally deserve as much weight as those of an examining or treating physician, the ALJ did appropriately ascribe weight to the findings here because of their consistency with other evidence in the record. *See Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005); 20 C.F.R. § 404.1527(d)(1), (f). The court finds that the ALJ's RFC determination is otherwise supported by substantial evidence.[7] Plaintiff's challenge to the ALJ's RFC determination should accordingly be denied.

### III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that defendant's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days to file written objections. Failure to file timely

---

[7] Plaintiff contends that the hypothetical the ALJ presented to the vocational expert was erroneous on the grounds that the ALJ's RFC determination was erroneous. Because the ALJ's RFC determination was lawful, plaintiff's contention is without merit. *See Johnson*, 434 F.3d at 659.

written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

    This, the 22nd day of January, 2008.

James E. Gates<br>
United States Magistrate Judge